COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judge Elder and Senior Judge Cole
Argued at Richmond, Virginia

LEON JUNIUS McDANIELS, JR.,
  S/K/A LEON J. McDANIEL

v.    Record No. 0413-94-2                    MEMORANDUM OPINION[*]
                                              BY MARVIN F. COLE
COMMONWEALTH OF VIRGINIA                      AUGUST 29, 1995

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      James B. Wilkinson, Judge

            Maureen L. White, Assistant Public Defender
            (David J. Johnson, Public Defender, on
            brief), for appellant.

            Michael T. Judge, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


     Leon Junius McDaniels, Jr. appeals his conviction for

possessing cocaine with the intent to distribute.  He contends

that the trial court erred in denying his motion to suppress the

cocaine.  Finding no error, we affirm.

     In considering a trial court's ruling on a suppression

motion, we view the evidence in the "light most favorable to

. . . the prevailing party below," the Commonwealth in this

instance, and the decision of the trial judge will be disturbed

only if plainly wrong.  Commonwealth v. Grimstead, 12 Va. App.

1066, 1067, 407 S.E.2d 47, 48 (1991).  To prevail on appeal,

McDaniels must "show . . . that the denial of [his] motion to

suppress constitute[d] reversible error."  Motley v.

Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233

--------

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

(1993).

The Commonwealth's evidence showed that Officer Samuels and Trooper Clark were patrolling in the City of Richmond in an unmarked vehicle on November 5, 1993.  At about 11:30 p.m., Samuels and Clark approached a group of people at a street corner.  Other police cars followed.  McDaniels was among the group.  Samuels recognized McDaniels.  McDaniels looked in the direction of the police car, then turned and walked toward a nearby residence.  Samuels and Clark left the police car and followed McDaniels to the front of the residence.  McDaniels stopped on the porch outside of the residence, and Samuels asked McDaniels his name and where he lived.  As the two conversed, McDaniels "kept placing his hand in his left front pocket . . . like he was grabbing something from his pocket."  Samuels asked McDaniels three times if Samuels could search McDaniels, including "his pocket."  McDaniels agreed all three times.  When Samuels reached for the pocket, McDaniels grabbed Samuels' hand and said that he would remove anything out of the pocket.  McDaniels removed money and a clear plastic baggie from the pocket.  Samuels grabbed the baggie, and McDaniels hit Samuels in the eye.  McDaniels unsuccessfully tried to flee.

The baggie that Samuels grabbed contained cocaine.  After McDaniels' arrest, Samuels recovered two other bags of cocaine from another of McDaniels' pockets, two packets of marijuana, a "large plastic bag with six more baggies of off-white substance,"

two pagers, and $115.

McDaniels testified that he tried to enter the residence, but Clark blocked his way. He also testified that Samuels "grabbed hold of my pocket," and that he consented to the search because "I was kind of scared because of the way they came up to me."

In denying the motion to suppress, the trial judge made the following factual findings:

> I find for a fact it was at the most three police cars, at the most eight policemen came to third and somewhere, I forget the same [sic] of the street, I'm very familiar with it. They got out. The defendant started walking towards the house and stopped. Apparently, curiosity, I don't know, he stopped. And the officer went up to him and was talking to him and he had put his hand in his pocket. He told him to take it out. He wanted some identification at that time and asked could he search him. He said yes. He asked him three times because he wanted to make sure he knew it wasn't a pat down, it was a search. And, the defendant readily consented. I find no threats or forms of violence or any statements that would intimidate whatsoever. And, then he said the officer grabbed him by the hand and he said I will get out of my pocket what you want. Then the cocaine comes out after the money. It was in clear open daylight or nighttime light. And it was stuck, as he said, to the money, down in the money. When he saw it I think it's his duty to arrest him. Those are the findings of fact . . . .

The trial judge believed the Commonwealth's evidence, and rejected McDaniels' version of the encounter. "The weight which should be given to evidence and whether the testimony of a

3

witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). We cannot say that the testimony of Samuels and Clark was inherently incredible. Given that testimony, and viewing the evidence in the light most favorable to the Commonwealth, we cannot say that the trial judge erred in denying the motion to suppress. That testimony established that the encounter between McDaniels and the officers was consensual, and did not implicate the Fourth Amendment. See Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (en banc). Furthermore, that testimony showed that McDaniels consented to the search of his person, then voluntarily removed cocaine from his pocket. At that point, the officers had probable cause to arrest McDaniels.

Affirmed.

4

Elder, J., dissenting.


I respectfully dissent and would hold that the trial court erred in not suppressing the cocaine obtained from McDaniels. I believe McDaniels was unlawfully seized, and any consent given to the officers was unlawfully obtained.

First, contrary to the majority opinion, I believe that McDaniels was "seized" for purposes of the Fourth Amendment. A person is seized when "his freedom of movement is restrained by means of physical force or show of authority . . . ," Grinton v. Commonwealth, 14 Va. App. 846, 849, 419 S.E.2d 860, 862 (1992) (citing I.N.S. v. Delgado, 446 U.S. 210, 216 (1984)), or when the circumstances "amount to a show of authority such that 'a reasonable person would have believed that he was not free to leave.'" Moss v. Commonwealth, 7 Va. App. 305, 307, 373 S.E.2d 170, 171-72 (1988) (quoting Florida v. Royer, 460 U.S. 491, 502 (1983)). Three police vehicles and eight officers approached the group with which McDaniels was standing. Officers Samuels and Clark followed McDaniels to a residence and surrounded him on his stoop, which was not meant to accommodate three persons. Officer Clark's leg was extended with his foot pressed against the front door of the residence, preventing McDaniels' entrance into the house. These circumstances amounted to a show of force such that "a reasonable person would have believed he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 544 (1980);

see Satchell v. Commonwealth, 20 Va. App. ___, ___ S.E.2d ___ (1995) (en banc) (finding a seizure where one officer confronted defendant on his front stoop with three other officers in the near vicinity).

Furthermore, there is nothing in the record to show (nor did the Commonwealth contend) that the officers had any reasonable, articulable suspicion, based on objective facts, to believe that McDaniels was engaging in criminal activity. See Moss, 7 Va. App. at 308, 373 S.E.2d at 172. The illegality of the seizure therefore tainted McDaniel's consent and was ineffective to justify the search. Royer, 460 U.S. at 507-08; Deer v. Commonwealth, 17 Va. App. 730, 736, 441 S.E.2d 33, 37 (1994).